```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
RUTH RAPPORT,

                    Plaintiff,
                                                07-CV-6509
          v.
                                                DECISION AND
MICHAEL O. LEAVITT, in his                      ORDER
official capacity as Secretary,
United States Department of Health
& Human Services,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Ruth Rapport ("plaintiff"), appeals the final determination of the defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services (the "Secretary"), denying Medicare coverage for skilled nursing facility services ("SNF") care provided to plaintiff. Plaintiff moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and the Secretary cross-moves for judgment on the pleadings. For the reasons set forth below, the plaintiff's motion is denied and the Secretary's motion is granted.

## STATUTORY AND REGULATORY BACKGROUND

The Medicare program, established under Title XVIII of the Social Security Act (commonly known as the Medicare Act, codified at 42 U.S.C. § 1395 et seq.), pays for covered medical care to eligible elderly and disabled persons. The Department of Health and

Human Services ("HHS"), through the Secretary, administers the Medicare program and has delegated this function to the Center for Medicare and Medicaid Services ("CMS"). Medicare "Part A," is a hospital insurance program covering inpatient care and certain post-hospital services including home health services furnished by a home health agency. 42 U.S.C. §§ 1395c-1395i-5. Medicare "Part B," is a voluntary supplemental insurance program covering certain outpatient services such as physician services. 42 U.S.C. §§ 1395j-1395w-4. In 2003 Congress established the Medicare Advantage program ("MA" program) under Part C of the Act replacing the Medicare + Choice program. See Pub. L. No. 108-173, § 221, 117 Stat. 2066, 2180 (2003); see also 70 Fed. Reg. 4,588 (2005). This case involves Part C, specifically the MA program relating to payments to post-hospital skilled nursing facility care.[1]

Generally individuals may participate in an MA plan: if they are entitled to benefits under Part A and enrolled in Part B of the Medicare program; if they reside in the service area of the MA plan; and if they complete and sign an election form. See 42 C.F.R. §422.50. In addition, enrollees in the MA plan are entitled, at a minimum, to basic benefits consisting of all Medicare covered

---

[1] References to "M+C" organizations or enrollees are also applicable to MA programs. The MA program permits eligible individuals to elect to receive Medicare benefits through enrollment in health plans offered by "Medicare Advantage plans," which are generally administered by private insurance companies that have contracted with CMS to provide a type of plan in a particular service area. See 70 Fed. Reg. at 5,489 - 4,590; 42 U.S.C. §1395w-27.

services, except hospice care. See 42 C.F.R. §§ 422.100(c)(1), 422.101(a). Further, an MA plan may include supplemental benefits not covered by the Medicare program. See 42 C.F.R. §§ 422.100(c)(2). It is necessary for an MA organization to provide detailed information to enrollees concerning the plan, specifically "the benefits offered under a plan, including applicable conditions and limitations, premiums and cost-sharing ... and any other conditions associated with the receipt or use of benefits." See 42 C.F.R. § 422.111(b)(2). The MA organization must disclose this information to each enrollee at the time of enrollment, and at least annually thereafter. See 42 C.F.R. § 422.111(a). In return, enrollees are required to abide by the rules of the MA organization after they are disclosed in conjunction with the election process. See 42 C.F.R. §§ 422.50(a)(6).

Medicare benefits include coverage for up to one hundred (100) days of post-hospital extended care services[2] during any spell of illness. 42 U.S.C. § 1395d(a)(2)(A). To receive Medicare coverage for post-hospital SNF care, the plaintiff must have been an inpatient in a qualifying hospital for at least three (3) consecutive calender days, not including the day of the discharge,

---

[2] The Medicare Act defines "extended care services" as including the following services, provided to an inpatient of a SNF, among others: nursing care provided by or under the supervision of a registered professional nurse; physical, occupational or speech-language therapy provided by the SNF; medical social services; and such other services necessary to the health of the patients as are generally provided by SNF, or others under arrangements with them made by the facility. See 42 U.S.C. § 1395x(h).

and must have been discharged in or after the month he or she became eligible for Medicare. See 42 C.F.R. § 409.30(a). Accordingly, it is a requirement for MA organizations to provide coverage of post-hospital extended care services at a SNF where a beneficiary has met the three-day qualifying hospital stay requirement provided other requirements for Medicare coverage and payments are also met. Further, MA organizations "may elect to furnish, as part of their Medicare covered benefits, coverage of post-hospital SNF care ... in the absence of a prior qualifying hospital stay that would otherwise be required for coverage of this care." See 42 C.F.R. §422.101(c).

The regulations also specify that if, upon admission to the SNF, the patient was enrolled in an MA plan "offering the benefits described in §422.101 (coverage for post-hospital extended care services in a SNF without prior qualifying hospital stay)," then the beneficiary will be considered to have met certain pre-admission requirements under Medicare, including the requirement that the beneficiary must be hospitalized for at least three consecutive calendar days prior to admission to the SNF. See 42 C.F.R. §409.30(b)(2)(ii). Where an MA plan elects to furnish coverage of post-hospital SNF care in the absence of a qualifying hospital stay, then SNF services may be furnished for a condition for which a physician has determined that a direct admission to a

SNF without an inpatient stay would be medically appropriate. See 42 C.F.R. §409.31(b)(2)(iii).

## **ADMINISTRATIVE APPEALS PROCESS**

The Medicare regulations provide for administrative review of a denial of a Part C claim, and then federal court review of the Secretary's final decision. See 42 C.F.R. Part 405, Subpart G. After Medicare has made an initial determination regarding coverage, the claimant is notified. An individual who is dissatisfied with the initial determination may request reconsideration within sixty (60) days. See 42 C.F.R. § 422.582(b). After CMS has issued written notice of the reconsidered determination, an individual may submit a written request for a hearing before an Administrative Law Judge ("ALJ") if the amount in controversy is one hundred dollars ($100) or more. See 42 U.S.C. §1395w-22(g)(5) (cross-referencing 42 U.S.C. §1395ff(b)(1)(E); 42 C.F.R. §422.600). A party may request review of an ALJ decision by the Medicare Appeals Board ("MAC") of the HHS Department Appeals Board within sixty (60) days after the date he or she received notice of the hearing decision or dismissal. See 42 C.F.R. § 422.608. If the amount in controversy is one thousand dollars ($1,000) or greater, a dissatisfied claimant or provider of services can seek federal court review of a MAC decision, or an ALJ decision if MAC declines to review the ALJ decision. See 42 U.S.C.

§ 1395ww-22(g)(5) (cross-referencing 42 U.S.C. §1395ff(b)(1)(E), 42 C.F.R. § 422.612(a) and (b)).

## BACKGROUND

On December 5, 2006, plaintiff, then ninety (90) years old, was admitted to Highland Hospital ("Highland") in Rochester, N.Y. due to a broken ankle she suffered as a result of tripping in her residence. Administrative Record ("AR") 3. She was treated and on the same day transferred to the Jewish Home and Infirmary (the "Jewish Home") to receive SNF rehabilitation services. Id. The treating physician at Highland certified a plan of care including restorative and skilled occupational therapy six times a week for four weeks. AR 42. At all relevant times, plaintiff was enrolled in Preferred Care, an MA plan offered by the Rochester Area Health Maintenance Organization. AR 3. The informational material provided by Preferred Care, which was in effect from January 1, 2006 through December 31, 2006 specifically indicated that a "3 day prior hospital stay [is] required" before SNF services would be covered. AR 140.

Preferred Care issued a letter to plaintiff on December 5, 2006 informing her that her request for payment regarding SNF services was denied because there was "no qualifying hospital stay (prior three-day hospital stay) within the last 30 days." AR 90. Upon receipt of the notification of non-coverage, plaintiff

requested on December 18, 2006 that Preferred Care reconsider its determination denying her SNF care. AR 261. In particular, plaintiff asked that the required three-day hospital stay be "waived." Id. The plaintiff provided a letter from Dr. Bernard Shore, her attending physician, who stated that the plaintiff was a 90-year old woman living by herself who sustained a serious fracture that could not be operated on initially, that she was not able to be independent in the home by herself, and that admission to a SNF was "quite appropriate in terms of her need and safety." Id. at 263. On January 26, 2007, Preferred Care upheld its initial determination. AR 79. The plaintiff appealed Preferred Care's reconsideration decision and on January 30, 2007, an independent outside entity contracted by CMS issued a decision finding that Preferred Care was not required to approve and pay for SNF care for plaintiff commencing December 5, 2006. AR 380-383.

Plaintiff appealed the outside entity's determination to an Administrative Law Judge ("ALJ"). On March 9, 2007, a telephonic hearing was held before ALJ Robert Alan Soltis. AR 385. The ALJ noted at the hearing that a three-day hospital stay is required before a claimant's stay in a SNF will be covered. Id. 391. However, the ALJ stated that he believed that 42 C.F.R. §409.30(b)(2)(ii) provided an exception wherein an MA enrollee, such as plaintiff, did not have to be hospitalized for three consecutive days before being admitted to

a SNF. Id. 391-393. On March 26, 2007, the ALJ rendered a decision in which he held that Preferred Care was obligated to provide coverage for the plaintiff's SNF services beginning December 5, 2006. AR 45-46. By letter dated April 17, 2007, Preferred Care requested that the MAC review the decision of the ALJ. AR 26-29.

In its request for review by the MAC, Preferred Care stated that under both traditional Medicare and Preferred Care's plan, a beneficiary is required to have a three day hospital stay prior to becoming eligible for SNF benefits. AR 28. In addition, Preferred Care noted that the ALJ failed to consider relevant language in 42 C.F.R. §409.30(b)(2)(ii), which states that a beneficiary will be considered to have met the three day hospital stay requirement, if the beneficiary was enrolled in a MA plan "offering the benefits described in § 422.101(c) (i.e. coverage of post-hospital extended care services in a SNF without a prior qualifying hospital stay)." AR 27-28. Preferred care unambiguously stated that it "was not offering the benefits described in § 422.101(c)." AR 28. Accordingly, Preferred Care asked that the ALJ's decision be reversed.

On September 4, 2007, MAC issued a decision[3] reversing the ALJ's decision and finding that Preferred Care was not required to cover and pay for SNF services furnished to plaintiff beginning

---

[3] MAC issued a Notice of Proposed Decision on August 1, 2007 notifying plaintiff that it intended to issue an unfavorable decision regarding her case and permitting plaintiff the opportunity to submit additional evidence or legal argument. AR 17. On August 6, 2007, plaintiff provided a response to MAC.

December 5, 2006. AR 19. The MAC noted that a MA plan may offer supplemental benefits in addition to basic benefits. However, in this situation MAC found that "there is no indication in the MA plan's informational materials for enrollees that ... supplemental SNF benefits were offered under the plan." AR 6. The MAC further found that the record supported Preferred Care's contention that it "was not offering the benefits described in § 422.101(c)." AR 7. In particular, MAC noted that neither the MA plan's Evidence of Coverage ("EOC"), which details the plan's coverage and is provided to enrollees, nor any other informational materials in the record, stated that the MA plan was waiving the Medicare three day hospital requirement for enrollees to qualify for SNF benefits. Id. It was also noted by MAC that the informational materials in the record explicitly stated that a "3-day prior hospital day stay [is] required." Id. Therefore, MAC found that there was no evidence in the record that the MA plan "waived the statutory and regulatory qualifying requirements for coverage of SNF services ... as authorized by 42 C.F.R. §422.101(c)." AR 7-8.

Moreover, MAC found that the ALJ erred in construing 42 C.F.R. §409.30(b)(2)(ii) as supporting MA coverage of the SNF services at issue here merely because the plaintiff was a member of the MA plan. AR 8. As MAC noted, the regulatory provision relied on by the ALJ "clearly contemplates that certain requirements for coverage of

SNF services will be deemed to have been met only when a MA plan **'elects** to furnish, as part of their Medicare covered benefits,' coverage of SNF services 'in the absence of the prior qualifying hospital stay that would otherwise be required for coverage of this care.'" AR 8, quoting 42 C.F.R. §409.30(b)(2)(ii). In addition, MAC stated that plaintiff's request that the three day hospital stay requirement be waived may only be granted by the MA organization in its discretion. However, the MAC does not have authority to either waive the requirement nor order the MA organization to do so. AR 9. Therefore, MAC was obligated to reverse the ALJ decision. The MAC's September 4, 2007 decision stands as the final decision of the Secretary. On October 17, 2007, plaintiff commenced this action appealing the final decision of the Secretary.

## DISCUSSION

### I. Standard of Review

A final decision by the Secretary of Health and Human Services as to Medicare coverage is conclusive if it is supported by substantial evidence. See Hurley v. Bowen, 857 F.2d 907, 912 (2d Cir.1988); Friedman v. Secretary of Health & Human Serv., 819 F.2d 42, 44 (2d Cir.1987). The Secretary's findings will be upheld if the supporting evidence is "more than a mere scintilla." See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This

"means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See id. In assessing whether substantial evidence supports a decision by the Secretary a court is to review the record as a whole, looking at the evidence supporting the Secretary's position, as well as other evidence that detracts from it. See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.1990). "Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." See id. (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir.1988)).

A court's review of a Medicare claimant's need for skilled nursing care as opposed to custodial care is guided by two (2) principles. See Friedman, 819 F.2d at 45. "First, the decision should be based upon a common sense non-technical consideration of the patient's condition as a whole." See id. (citations omitted). "Second, the Social Security Act is to be liberally construed in favor of beneficiaries." See id. (citations omitted). Nevertheless, a plaintiff has the burden of proving entitlement to Medicare benefits. See id. (citations omitted).

## II. **The findings of the Secretary were supported by substantial evidence and proper as a matter of law**.

The MAC concluded that Preferred Care was not required to cover and pay for SNF services furnished to plaintiff beginning December 5, 2006 onwards. Further, MAC noted that a MA plan may

offer supplemental benefits in addition to basic benefits. However, MAC found that "there is no indication in the MA plan's informational materials for enrollees that ... supplemental SNF benefits were offered under the plan." Moreover, MAC found that the record supported Preferred Care's contention that it "was not offering the benefits described in § 422.101(c)." On appeal, plaintiff contends that the MAC's determination is not supported by substantial evidence in the record and should be reversed. Plaintiff argues that the lack of a three day inpatient hospital stay before her entry to the Jewish Home does not disqualify her from Medicare coverage because she falls under one of the exceptions to the three day hospitalization rule. Relying on 42 C.F.R. §409.31(b)(2), the same provision relied on by the ALJ, plaintiff contends that because her physician Dr. Shore determined that a direct admission to a SNF was medically appropriate, this triggers the waiver of the usual required inpatient hospital stay.

    A.    <u>There is substantial evidence in the record to support the MAC's finding that the MA plan did not elect to cover the SNF benefits for plaintiff absent a qualifying stay</u>.

The Medicare statute requires that MA plans offer the same benefits to enrollees that would be offered to beneficiaries under Part A or Part B, but states that MA plans may supplement Medicare coverage with other benefits. See <u>Masey v. Humana, Inc.</u>, 2007 WL 2363077 *3 (M.D.Fl. 2007). In addition, it is a requirement under

the regulations that a MA organization disclose the "benefits offered under a plan ... and any other conditions associated with receipt or use of benefits." See 42 C.F.R. §422.111. The MAC stated in its decision that there was no indication in the MA plan's informational materials that supplemental SNF benefits were being offered. AR 6. The record shows that the Preferred Care plan booklet and other informational materials informed plan enrollees that a "three day hospital stay [is] required" for coverage of service in a SNF. See AR 32, 36, 39. Based on Preferred Care's express notification to its enrollees that it would not cover SNF benefits in the absence of a prior three day hospital stay, the Court finds that there is substantial evidence in the record to support the MAC's determination that Preferred Care had not elected, pursuant to 42 C.F.R. § 422.101(c), to cover the SNF benefits at issue, absent a qualifying stay.

Further, 42 C.F.R. §409.30[4] requires that the beneficiary "[h]ave been hospitalized in a participating or qualified hospital ... for medically necessary inpatient hospital ... care, for at least 3 consecutive calendar days, not counting the date of discharge." See 42 C.F.R. §409.30(a)(1). An applicable exception to this requirement is where, upon admission to the SNF, the

---

[4]This is the regulation relied upon by plaintiff relating to pre-admission requirements for Medicare coverage of SNF services, including the requirement of a prior qualifying hospital stay.

beneficiary was enrolled in a MA plan. However, the exception is applicable *only if* the plan "offers[s] the benefits described in §422.101(c) (i.e. coverage of SNF services in the absence of a qualifying hospital stay.)" The record in this case contains many references, including the informational material provided by Preferred Care to enrollees that support the factual finding that Preferred Care did not elect to provide the services for which the plaintiff claims payment. The Preferred Care plan booklet and other informational material informed enrollees that a three day hospital stay was required before SNF care would be paid for. Plaintiff was specifically informed by Preferred Care upon her admission to the SNF that the plan would not cover her stay. Accordingly, the record shows that Preferred Care did not waive the requirements of a prior qualifying hospital stay. AR 7, 32, 36, 39. Also, there is nothing in the Preferred Care Administrative Policy or any other written materials in the record that supports the plaintiff's claim that Preferred Care had a policy of making available a waiver of the qualifying hospital stay. Thus, upon a review of the record and as discussed above, the substantial evidence demonstrates that Preferred Care did not offer the benefits described in 42 C.F.R. §422.101(c) and as such plaintiff was not entitled to coverage of her SNF benefits absent a three day hospital stay.

B.   <u>Plaintiff does not qualify for coverage of SNF services, even if her doctor determined that direct admission to a SNF without a hospital stay was medically appropriate</u>.

Plaintiff relies upon 42 C.F.R. §409.31(b)(2)(iii), a different regulation that the one analyzed by MAC. This regulation (42 C.F.R. §409.31) sets forth specific conditions for meeting level of care requirements. Plaintiff contends that Preferred Care is required to cover the SNF services in question under 42 C.F.R. §409.31(b)(2)(iii). However, the regulation deals with the level of care that must be provided before a SNF service will be covered by Medicare and is not concerned with the prior three day hospital stay requirement. Further, the regulation states that the services provided in a SNF must be furnished for a condition "for which, for an M+C enrollee described in §409.20(c)(4) [i.e. enrolled in a plan that includes the benefits described in §422.101(c)], a physician has determined that a direct admission to a SNF without an inpatient hospital ... stay would be medically appropriate." <u>See</u> 42 C.F.R. §409.31(b)(2).

The regulation states that MA beneficiaries enrolled in plans that cover SNF benefits without a three day hospital stay do not have to show that they received services for a condition for which they had received inpatient hospital care, provided that a physician has decided that a direct admission to a SNF without a hospital stay would be medically appropriate. Accordingly, this

-15-

regulation requires that a physician documents that the medical condition of the claimant requires post hospital extended care services even though there has been no inpatient hospital stay because the MA plan, pursuant to 42 C.F.R. §422.101(c) *has elected* not to require such a stay. However, the regulation does not relate to the requirement provided under 42 C.F.R. §409.30(b)(2) that a claimant must have had a prior three day hospital stay prior to entering the SNF, except when the enrollee in a MA plan has elected that such SNF services be covered without a qualifying stay under §422.101(c).

I find that substantial evidence exists in the record that Preferred Care did *not* elect to provide the services for which the plaintiff claims payment. The record also demonstrates that Preferred Care did not waive the requirements of a prior qualifying hospital stay. A claimant that is enrolled in a MA plan, which does not contain an election under 42 C.F.R. §422.101(c), does not qualify for coverage of SNF services, even though a doctor determines that direct admission to a SNF without a three day hospital stay was medically appropriate. Therefore, the MAC's finding that "Preferred Care was not offering the benefits described in [42 C.F.R. §422.101(c)," and that "there is no evidence in the record that the MA plan waived the statutory and

regulatory qualifying requirements for coverage of SNF services" are supported by substantial evidence in the record.

## **CONCLUSION**

The Secretary's findings are supported by substantial evidence in the record and are proper as a matter of law. Accordingly, the plaintiff's motion for judgment on the pleadings is denied and the defendant's cross-motion for judgment on the pleadings is granted. The plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                            s/Michael A. Telesca
                                              MICHAEL A. TELESCA
                                              United States District Judge

Dated:    July 9, 2008
            Rochester, New York